(8 Misc. Rep. 288.)

O'CONNOR v. NATIONAL PARK BANK OF NEW YORK.

(Common Pleas of New York City and County, General Term.   May 7, 1894.)

PRELIMINARY INJUNCTION—WHEN GRANTED.
    A preliminary injunction will not be granted unless the evidence shows preponderance of proof in plaintiff's favor.

Appeal from special term.

Action by James O'Connor against the National Park Bank of New York. From an order denying a motion to continue a preliminary injunction, plaintiff appeals. Affirmed.

Argued before DALY, C. J., and BISCHOFF and GIEGE-RICH, JJ.

Kellogg, Rose & Smith (L. Laflin Kellogg, of counsel), for appellant.

Barlow, Wetmore & Murray, for respondent.

DALY, C. J. The object of the injunction was to prevent the sale by the bank of certain collaterals belonging to the plaintiff ($35,000 of the bonds of the Laclede Gas Company), which it holds

to secure the note of W. W. Gibbs, indorsed by the plaintiff, for $23,903, at four months, dated June 19, 1893. The bank claims that the collateral was deposited with it on the discount of the note, while plaintiff claims that the collateral was deposited under a subsequent agreement, by which the bank undertook, at plaintiff's request, to exhaust its remedy at law against the maker of the note before resorting to the plaintiff, or his collateral, for payment, which agreement, as he avers, it refuses to perform. The office of the injunction was to prevent the sale of the bonds until the agreement was carried out, and to restrain the defendant from discontinuing an action it had commenced against Gibbs, upon the note, in Philadelphia, where he resided.

There is no question that when the note fell due the bank, at plaintiff's request, commenced the action against the maker, and exacted a bond of indemnity from the plaintiff against any liability it might incur thereby. But it is denied that this was other than a voluntary act done as a favor to a customer and stockholder, that there was any consideration for it, or that there was an agreement to prosecute that action, or to forbear resort to the collateral. It is manifest that the determination of this question would be controlled by the proof as to the deposit of the collateral; for, if the deposit was under the arrangement for the commencement of the Philadelphia action, there would be the strongest evidence that there was an agreement to postpone proceedings against the plaintiff until the remedy of the bank against the maker had been exhausted. If, on the other hand, the collateral was taken upon the discount of the note, there would not only be no probability that the bank had made the alleged agreement, but such an agreement made at the maturity of the note would be wholly without consideration and unenforceable. It is upon this question of fact that the record before us fails to show that preponderance of proof in plaintiff's favor which is indispensable to a motion for a preliminary injunction. There is not only a direct conflict of witnesses as to the alleged agreement, but undisputed facts seem to support the contention of the defendant. It appears that the note now held by the bank is the last of a series made by Gibbs and indorsed by the plaintiff; each successive note being discounted for the latter by the bank, and the proceeds, or part thereof, used to retire the maturing paper. The first note was for $15,000, and was discounted June 4, 1891, for the plaintiff, who then deposited with the bank $25,000 of the bonds in question as collateral security for the payment thereof. On the 15th December, 1891, when that note fell due, another for the same amount was discounted, and the prior note taken up, and the same bonds were left with the bank as collateral. The new note fell due June 18, 1892, and on the 15th plaintiff had a note for $22,675 discounted; paying the maturing note with part of the proceeds, and receiving the difference in cash from the bank, and depositing $10,000 more of the bonds of the Laclede Gas Company with the bank as additional security. The last-named note fell due December 18, 1892, and a further note for $23,903 was discounted,—the proceeds paying the old note,—

and the $35,000 bonds were left as collateral; and they remained with the bank when a new note was discounted, on June 19, 1893, to take up the note last mentioned, which fell due the day before, and they have remained with the bank ever since. The note of June 19, 1893, matured October 22, 1893, and is the note now unpaid by the bank. The plaintiff's claim is that the bonds were not pledged by him as security for this note, and that, although they remained in possession of the bank, they did not become collateral for the paper until he pledged them on the faith of the promise of the bank to first exhaust its legal remedies against Gibbs. The probabilities, on the state of facts here presented, are in favor of the claim made by defendant that the bonds were left as collateral for the last note, as they had been for the preceding note; for no reason is shown why the bank should relinquish the security it held, when it was practically renewing the obligation for which such security had been pledged. Upon the facts, therefore, the plaintiff presented a doubtful case for an injunction, and his motion was properly denied for that reason. The injunction was also properly denied for the reason that plaintiff had an adequate remedy at law, in case of an unauthorized disposition of his bonds, for there is no allegation that the securities have no market value, or that damages in an action of conversion are not easily provable. The order appealed from should be affirmed. All concur.